UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: THOMAS J. BUDD MUCCI,  No. 7-09-11609 JA

      Debtor.

JACK KRIETZBURG and
SHARON KRIETZBURG,

      Plaintiffs,

      v.  Adv. No. 09-1098 J

THOMAS J. BUDD MUCCI,

      Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the Motion For Summary Judgment and Memorandum in Support Thereof ("Motion")(Docket No.37) filed by Defendant Thomas J. Budd Mucci on March 24, 2010. Plaintiffs' Response to Defendant's Motion for Summary Judgment ("Response")(Docket No.55) was filed May 13, 2010.

On July 17, 2009, Plaintiffs Jack Krietzburg and Sharon Krietzburg filed this adversary proceeding against Thomas J. Budd Mucci pursuant to 11 U.S.C. §523(a)(4) seeking a determination that a debt owed to them by Mr. Mucci is non-dischargeable. Mr. Mucci is an attorney. The Krietzburgs' claim arises as a result of Mr. Mucci's representation of them in State Court construction defect litigation ("State Court litigation") entitled *Krietzburg v. Kramer, et al*, CV 2005-1158. The Krietzburgs allege that Mr. Mucci improperly diverted settlement funds for his own use after the settlement of the State Court litigation; failed to account for funds as paid to him; and that the accounting he later provided was fraudulent. The Krietzburgs further assert that although the parties agreed to an hourly fee billing arrangement at the inception of the State

Court litigation, the billing arrangement was changed to a contingency fee when Daymon Ely was retained to associate as Mr. Mucci's co-counsel. They claim that Mr. Mucci was not entitled to apply settlement proceeds to fees he would have earned had the fee arrangement always been on an hourly basis. The Krietzburgs seek an accurate accounting from Mr. Mucci as well as a determination that any settlement proceeds improperly retained by Mr. Mucci or other amounts paid to him but not disbursed as agreed be deemed non-dischargeable. Finally, the Krietzburgs seek treble damages and an award of their fees and costs incurred in pursuing this adversary proceeding.

Mr. Mucci asserts that at all times he rendered services for the Krietzburgs in connection with the State Court litigation on an hourly basis, including after the Daymon Ely was retained as his co-counsel. Mr. Mucci asserts that all settlement funds he retained and other monies he was paid were properly applied to pay his earned fees or to reimburse him for reimbursable costs. Mr. Mucci disputes that he failed to provide an accurate accounting. He asserts that he provided the Krietzburgs with an accounting on two separate occasions: first, during a Disciplinary Board investigation commenced upon a complaint filed by the Krietzburgs; and second, in connection with the instant adversary proceeding. Mr. Mucci asserts that because the Disciplinary Board determined that no action would be taken, and that Deputy Disciplinary Counsel Joel L. Widman made a specific determination that the Krietzburgs were aware of the legal fees and costs being incurred and were in a position to challenge any improper bills, summary judgment is proper.[1]

---

[1] *See* Defendant's Motion for Summary Judgment at p.3. Defendant provided a copy of Mr. Widman's letter dated June 20, 2008, attached to the Motion for Summary as Exhibit 4, but the Court will not consider any statements contained therein as the correspondence has not been authenticated. However, even if the Court were to consider the letter, it would not affect the Court's decision. Findings by an investigator do not have preclusive effect, and as discussed below Plaintiffs have raised issues of material fact sufficient to preclude the Court from granting summary judgment.

The Court after consideration of the pleadings and briefs, the facts, and applicable law has determined that Defendant's motion for summary judgment should be denied.

### A.     SUMMARY JUDGMENT STANDARD

It is appropriate for the Court to grant summary judgment if the pleadings, discovery materials, and any affidavits before the Court show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c) made applicable to the adversary proceeding by Fed. R. Bankr.P. 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . . [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Courts must review the evidentiary materials submitted in support of a motion for summary judgment to ensure that the motion is properly supported by evidence.

A motion for summary judgment may be supported by affidavits, but affidavits are not required.  See Fed.R.Civ.P. 56(c)(2); Fed.R.Civ.P. 56(a)(A party claiming relieve may move with or without supporting affidavits . . .")(emphasis added).   An affidavit offered in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed.R.Civ.P. 56(e)(1).    The party opposing a properly supported motion for summary judgment, "may not rely merely on allegations or denials" contained in his or her own pleading, but must "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2).   In determining whether to grant a movant's request for summary judgment, the Court must view the facts in the light most favorable to the party opposing summary judgment.[2]

---

[2] *Harris v. Beneficial Oklahoma, Inc., (In re Harris),* 209 B.R. 990, 995 (10th Cir. BAP 2007)("When applying this standard, we are instructed to 'examine the factual record and reasonable inferences therefrom in the light most

### B. Undisputed Facts

In the spring of 2005, the Krietzburgs retained Mr. Mucci to represent them in the State Court litigation on an hourly basis. *See Exhibit 2 to Response, Affidavit of Sharon Krietzburg at ¶ 2* and *Answer to Complaint and Counterclaim at ¶4(b) and 10; Exhibit 5 to Response, Deposition of Thomas Mucci at p.10.* With the Krietzburgs' consent, Mr. Mucci engaged Butt, Thornton & Baehr (specifically Patrick Griebel of that firm) to serve as co-counsel for the Krietzburgs with Mr. Mucci. *Id.* In the late summer or early fall of 2006, Daymon Ely replaced Butt, Thornton & Baehr as co-counsel for the Krietzburgs with Mr. Mucci in the litigation. *See Exhibit (Docket No. 37-5) to Motion, Affidavit of Sharon Krietzburg dated October 20, 2008 at ¶5* and *Exhibit 5 to Response, Deposition of Thomas Mucci at p.11, lns 22-25; p.12, lns 5-13; p.13, lns 11-15.* The State Court litigation settled on or about July 9, 2007. *See Complaint at ¶7* and *Answer to Complaint and Counterclaim at ¶7a.* The Krietzburgs advanced funds to Mr. Mucci for legal fees and costs prior to the settlement. *See Answer and Counterclaim at ¶12* and *Exhibit 2 to Response, Affidavit of Sharon Krietzburg at ¶6.* Settlement proceeds were disbursed to Mr. Mucci as counsel for the Krietzburgs. *See Complaint at ¶7* and *Answer to Complaint and Counterclaim at ¶7a.* On April 17, 2009 Mr. Mucci filed a voluntary petition under Chapter 7 of the Bankruptcy Code, Case No. 7-09-11609 JA.

### C. DISCUSSION

Mr. Mucci seeks summary judgment on the Krietzburgs' claim brought pursuant to Section 523(a)(4) which provides that a debtor may not discharge "any debt…for fraud or defalcation while acting in a fiduciary capacity …." 11 U.S.C. §523(a)(4). A finding of non-

---

favorable to the party opposing summary judgment.' ")); *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990)(internal quotation marks omitted); *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994)(stating that the court must "view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party . . .").

dischargeability under section 523(a)(4) requires a showing of the following elements: (1) the existence of a fiduciary relationship between the debtor and the objecting party; and (2) a defalcation committed by the debtor in the course of the fiduciary relationship.[3] The fiduciary duty contemplated by section 523(a)(4) is narrowly construed.[4] Whether a fiduciary duty exists is a question of federal law, but state law is relevant to the determination of whether a trust relationship exists.[5] The general definition of fiduciary, a relationship involving confidence, trust and good faith, is too broad in the dischargeability context.[6] The fiduciary relationship contemplated in 11 U.S.C. §523(a)(4) is limited to those arising out of a pre-existing express or technical trust, not an implied, resulting, or constructive trust.[7] Defalcation within the context of section 523(a)(4) is " the misappropriation of trust funds held in any fiduciary capacity, and the failure to properly account for such funds."[8] An objective standard is used to determine defalcation, and intent or bad faith is not a requirement.[9] Once a creditor has established that the debtor is a fiduciary and that entrusted funds have not been paid, the burden shifts to the debtor to "render an accounting to show that [the debtor] complied with its fiduciary duties."[10]

The initial inquiry is whether Mr. Mucci acted in a fiduciary capacity of the type contemplated by 11 U.S.C. § 523(a)(4) with respect to the funds he received from the settlement of the State Court ligation and from the Krietzburgs to pay legal fees and costs. The Court finds

---

[3] *Fowler Bros. v. Young (In re Young),* 91 F.3d 1267, 1371 (10th Cir. 1996)(stating that creditor has the burden to prove the fiduciary relationship; existence of fiduciary relationship is a legal issue); *Watson v. Parker (In re Parker)*, 264 B.R. 685, 700 (10th Cir. BAP 2001); *Antlers Roof-Truss & Builders Supply v. Storie (In re Storie)*, 216 B.R. 283, 286 (10th Cir. BAP 1997).
[4] *Holaday v. Seay (In re Seay),* 215 B.R. 780, 786 (10th Cir. BAP 1997).
[5] *Young*, 91 F.3d at 1371; *Storie,* 216 B.R at 286.
[6] *In re Van De Water,* 180 B.R. 283, 289 (Bankr.D.N.M. 1995)(citing *In re Angelle*, 610 F.2d 1335, 1338-39 (5th Cir.1980)).
[7] *In re Romero*, 535 F.2d 618 (10th Cir.1976); *In re Talcott*, 29 B.R. 874 (Bankr.D.Kan.1983).
[8] *In re Zois*, 201 B.R. 501, 506 (Bankr.N.D. Ill 1996)(citing *Nuchief Sales, Inc. v. Harper (In re Harper)*, 150 B.R. 416, 419 (Bankr.E.D.Tenn.1993)).
[9] *Green v. Pawlinski (In re Pawlinski)*, 170 B.R. 380, 389 (Bankr.N.D.Ill.1994) (Schmetterer, J.); *Blackhawk B.M.X., Inc. v. Anderson (In re Anderson)*, 64 B.R. 331, 334 (Bankr.N.D.Ill.1986); *In re Owens*, 54 B.R. 162, 165 (Bankr.D.S.C.1984).
[10] *Storie,* 216 B.R. at 288.

that Mr. Mucci did act in such a fiduciary capacity as to any amounts he received other than to pay earned fees or to reimburse him for costs already expended, regardless of whether there existed an hourly fee or contingent fee agreement between the parties.

"Under Tenth Circuit law, to find a fiduciary relationship exists the court must find that the money or property on which the debt at issue was based was entrusted to the debtor."[11] In New Mexico attorneys place themselves in a fiduciary capacity by virtue of the New Mexico Rules of Professional Conduct. Rule of Professional Conduct 16-115 provides in pertinent part:

> A. Holding another's property separately. A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five (5) years after termination of the representation.
>
> B. Client trust account deposits; discretionary. A lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account, but only in an amount necessary for that purpose.
>
> C. Client trust account deposits; mandatory. A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.
>
> D. Notification of receipt of funds or property. Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

---

[11] *Allen v. Romero (In re Romero)*, 535 F.2d 618 (10th Cir.1976); See *In re Young*, 91 F.3d at 1371.

NMRA, Rule 16-115. Mr. Mucci had a fiduciary duty to hold in trust any funds the Krietzburgs paid to him other than earned legal fees, and to hold in trust the settlement proceeds, and to only disburse the funds out of trust in accordance with the agreement of the parties. That is a type of fiduciary duty contemplated by 11 U.S.C. §523(a)(4).[12]

The second inquiry is whether there has been a misappropriation of settlement proceeds or other funds and whether the settlement proceeds and other funds have been or can be properly accounted for. Mr. Mucci claims he properly applied all of the Krietzburgs' payments to him and the settlement proceeds he retained to earned fees under an hourly fee arrangement and for reimbursable costs. The Krietzburgs contend that the payments and retained proceeds exceeded the sum of earned fees and reimbursable costs, that fees were earned first under an hourly and later under a contingent fee arrangement, and that the accountings Mr. Mucci provided were fraudulent.

Mr. Mucci has not provided any evidence in support of his motion for summary judgment regarding the amount of unpaid earned fees or the amount of outstanding reimbursable costs to which he applied settlement proceeds or payments he received from the Krietzburgs, or the amount of settlement proceeds he remitted to the Krietzburgs. Mr. Mucci relies on a letter from Sharon Krietzburg to Daymon Ely dated June 4, 2007 in which Ms. Krietzburg admits that Mr. Mucci provided the Krietzburgs with an accounting, and that she and her husband were "more than satisfied." That letter was written prior to the settlement of the State Court litigation, and therefore also prior to Mr. Mucci's receipt and disbursement of settlement proceeds.

---

[12] Attorneys have a fiduciary duty of the type contemplated by 11 U.S.C. § 523(a)(4) in cases where an attorney takes possession of a client's property and is subject to rules of professional conduct which create a duty to safeguard that property. *E.g. Ball v. McDowell (In re McDowell)*, 162 B.R. 136, 139 (Bankr.N.D.Ohio 1993); *Ducey v. Doherty (In re Ducey),* 160 B.R. 465, 469-470 (Bankr.D.N.H. 1993) (citing cases holding that a lawyer who holds client funds has such a fiduciary duty of the type covered by section 523(a)(4)).

The Court finds that affidavits of Jack Krietzburg and Sharon Krietzburg filed in support of the Krietzburgs' opposition to the Motion for Summary Judgment are sufficient to raise a material issue as to whether the hourly fee arrangement between the Krietzburgs and Mr. Mucci was converted to a contingent fee agreement when Daymon Ely was engaged as co-counsel with Mr. Mucci in the State Court litigation, and that Mr. Mucci has not demonstrated that the alleged contingent fee arrangement lacks sufficient specificity to create a binding agreement if such an agreement were reached.[13] Because the amount of settlement funds Mr. Mucci was entitled to retain depends on the terms of the fee agreement between the Krietzburgs and Mr. Mucci and a genuine issue exists as to those terms, a genuine issue exists regarding the amount of settlement funds Mr. Mucci was entitled to retain. Further, based on the submissions in support of and in opposition to the Motion for Summary Judgment, the Court finds a genuine issue exists concerning application of the payments made by the Krietzburgs to Mr. Mucci for fees and costs.

In support of his assertion that he has properly accounted for all funds, Mr. Mucci relies on two accountings, one given during a Disciplinary Board investigation commenced upon a complaint filed by the Krietzburgs; and the other in connection with the instant adversary proceeding. *See Motion at ¶2*. In support of his contention regarding the first accounting, Mr. Mucci relies on a letter resulting from a disciplinary board investigation. However, the Court must disregard the letter since it is not admissible under the Rules of Evidence.[14] Second, Mr. Mucci relies on a letter from Sharon Krietzburg to Daymon Ely dated June 4, 2007 in which Ms. Krietzburg admits that Mr. Mucci provided them with an accounting, and that she and her

---

[13] The Court will not consider the statements contained in Mr. Ely's letter dated November 6, 2009 attached at Exhibit 1 to the Response because it has not been authenticated and is inadmissible hearsay.

[14] The letter is not admissible because it has not been authenticated as required by Rule 901 of the Federal Rules of Evidence. Further, findings by an investigator do not have preclusive effect in this case. Because the findings do not have preclusive effect, and the investigator has not been qualified to testify as an expert, the letter setting forth the findings is inadmissible hearsay. Even if the Court were to consider the letter, however, it would not change the ruling made by the Court on the Motion for Summary Judgment.

-8-

husband were "more than satisfied." Third, Mr. Mucci relies on discovery provided in this adversary proceeding. The June 4, 2007 letter does not establish that Mr. Mucci accounted for the use and disposition of the settlement funds because the letter was written before the State Court litigation settled. The fact that Mr. Mucci provided an accounting as part of the discovery in this adversary proceeding does not establish that the accounting is accurate. The affidavit of Sharon Krietzburg, attached as Exhibit 2 to the Response, is sufficient to raise a genuine issue of material fact regarding whether a full and accurate accounting has been provided.

## CONCLUSION

Because there exist material issue of facts regarding whether Mr. Mucci misappropriated funds while acting in a fiduciary capacity of the type contemplated by 11 U.S.C. §523(a)(4), and whether he has provided a full and accurate accounting of those funds, the Court will deny Defendant's Motion. This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law under Rule 7052, Fed.R.Bankr.P. An appropriate order will be entered.

*/s/ Robert H. Jacobvitz*
_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Entered on Docket Date: July 2, 2010

Copies to:
Daniel J Behles
Moore, Berkson & Gandarilla, P.C.
P.O. Box 7459
Albuquerque, NM 87194
*Attorney for Defendant*

Roger Eaton
Will Ferguson & Associates
1720 Louisiana Blve NE Ste 100
Albuquerque, NM 87110

-and-

Walter L Reardon, Jr
3733 Eubank Blvd NE
Albuquerque, NM 87111-3536

-and-

Ada B. Priest
Madison, Harbour & Mroz
PO Box 25467
Albuquerque, NM 87125

*Attorneys for Plaintiffs*